Good morning, your honors. May it please the court, my name is Thomas Kenneth Lee. I'm an assistant federal public defender, and I represent Ricky Nolan, the petitioner-appellant, and I'd like to reserve two minutes for rebuttal. The Nevada Supreme Court clearly held that Ms. Weiser's testimony identifying Mr. Nolan as the person who sexually assaulted her should not have come in. So the only question before this court is whether or not the admission of her testimony against him was harmless error. Here, it cannot be harmless error, simply because her testimony is the testimony that clearly identifies Mr. Nolan as the person who assaulted her. There's no other evidence there that points to him as... So maybe you could explain why the Nevada Supreme Court did. That's a good question, your honor. Basically, the way Mr. Nolan presented it in state court was he presented it as a Confrontation Clause Sixth Amendment violation. And the Nevada Supreme Court recognized it as that. Well, how did the court recognize it as that? Because it was talking about the state statute. I mean, in his brief, in Mr. Nolan's brief, he has, he says Confrontation Clause twice, but he doesn't have any argument about it. And the state court didn't directly address that. Well, if we look to, for example, and I'm going to point to a dissent that you wrote in the Iowa decision for re-hearing on Bonk. That was a great dissent, but it was a dissent. And I know, I believe Judge Schmidt also concurred in that dissent. But when you look at Johnson... I did, because it was good. But the bottom line was it was nonetheless a dissent. And I think you have to address Judge Ikuda's questions pretty seriously, because to me, it seemed to me the Nevada Supreme Court was using Nevada law. And the federal district court assumed the rights were violated when the testimony was admitted, but did not decide the question. Just decided that it was going to make that determination based on this assumption. So I guess I'm still having a tough time, as is my good colleague, with whom I joined the good dissent. Why we're here. Well, I think it's clear that he tried to present a Sixth Amendment Confirmation Clause violation. And whether or not, if the Nevada Supreme Court did not address the issue on the merits on the constitutional violation, then the court reviews the claim de novo. So we either get to review the claim de novo, or we're going to go look to see what both you and Judge Ikuda said, and the dissent in Iowa, and we give the Nevada Supreme Court deference on that ruling. And we presume they ruled on the merits of the constitutional violation. I'm sorry. So if we presume, because I did like that dissent, so if we presume that the Nevada Supreme Court adjudicated his confrontation claim on the merits and denied it, why isn't the next step then, was that an unreasonable application of any Supreme Court precedent? And since the Supreme Court, the only precedent that was cited was Rock, which said you can't bar this sort of testimony, how could we say that the state Supreme Court's denial of his confrontation clause claim was not, was an unreasonable application? I mean, it was, there's nothing to unreasonably apply. Well, let me address Rock really quickly. Rock really deals with the proposition that you can't have a per se bar. And Nevada does not have a per se bar for hypnotic testimony coming in. What Nevada has is it has a procedural rule that requires certain things to be done before this hypnotic testimony can come in to test its reliability. And so when we get to reliability, then it really is not really, it becomes that confrontation clause issue. But what Supreme Court case tells us that the introduction of hypnotic testimony violates due process or confrontation clause or whatever? Well, I would agree that Rock does not directly point to that. But it says you can't bar it. Well, it says you can't, there can't be a per se bar. And then if we look at what Rock also says is that they also make this note that, oh, by the way, there is this, there's evidence there where you could have, let me point to it really quick. At page 62 it says the tape, they note that the tape recording provides some means to evaluate the hypnosis and the trial judge concluded that Dr. Blackback did not suggest responses and leading questions. So there was a means in Rock where they could test that reliability. And so once again, it comes back to being able to test the reliability of her testimony. And we can't do that without the procedures when the Nevada Supreme Court, or when the state failed to follow the proper procedures. Well, it seemed to me, though, in Rock that the question of the admissibility of this kind of testimony has been expressly reserved based on Rock. Well, I think it leaves it. I mean, and if it's reserved, then I go to Maris v. Sisto, which is one of our cases from 2012, and says where the Supreme Court expressly reserves the question, there is no clearly established Supreme Court president. So there I am. I then have to give some deference to the Nevada Supreme Court as to how they've done what they need to do. Well, and I agree that you should give deference to the Nevada Supreme Court because they clearly found causes for violation. Well, the Nevada Supreme Court really didn't make their decision based on Supreme Court president. They went with Nevada president. So, again, back to our good dissent. But then again, because it really goes back to being able to test the reliability, and that's the sole, that's really what the Confrontation Clause is for, to test the reliability of the evidence against you. I mean, if we were reviewing this de novo, I think your arguments would have more traction because we would have to consider in the first incident, or perhaps Mancuso tells us it's never a Confrontation Clause violation, so we might be bound by that. But we're not reviewing this de novo. We have to look at it through the lens of AEDPA, which says if the state court's ruling wasn't contrary to or an unreasonable application of Supreme Court president, then we have to uphold it. We can't grant the writ. Well, and I think there are two parts to, I guess, the question. One is there's the question of whether or not there's a constitutional violation, which my argument is there is. And then the other part is the analysis that the Nevada Supreme Court conducted. Now, if you give deference to the findings of the Nevada Supreme Court on the finding of the constitutional violation, then the question becomes whether or not the holding or the rationale or the analysis is the correct analysis that you also owe deference to. Here, the Nevada Supreme Court's analysis of the claim does not deserve deference at all and should be reviewed de novo, because basically what the Nevada Supreme Court does is when they review the harmless error analysis, they look at it in terms of substantiality, whether or not there's proof beyond a reasonable doubt that he committed this offense. But that's not the question under a harmless error analysis. The question is whether or not the admission of this improperly admitted evidence had a substantial injurious effect on the jury's verdict. And here it has to have a substantial injurious effect, because it's the evidence that points to Mr. Nolan as the person that sexually assaulted her. I mean, there's no other reason. I can see why direct analysis might be correct if we were in de novo review and you were talking about if the state court didn't rule on the confrontation clause issue, then we would be in review at de novo. And then if we found there was an error, then we'd look to see if there was substantial injurious effect under Brecht. But our charge is not to determine whether the state court was correct in its ruling. The Supreme Court has said the state court can be incorrect as long as it's not objectively unreasonable application. Well, and that's why it's objectively unreasonable, because they applied their incorrect law in terminating the harmless error analysis. I mean, they looked at it in terms of like Chapman as opposed to Brecht. Well, Brecht is for us, right? Brecht is not for the state court. But even on a harmless error analysis in state court, the sole review is basically a substantial injurious effect. And so that's what we have to look at. And here that's the problem is that they don't look at it like that. They just basically say, oh, there's enough evidence to prove that he's guilty. Let me ask you another question, which is a little bit off point, but nonetheless on point. You haven't made the argument, and I guess, therefore, you're not making it that the State has conceded there was constitutional error. Oh, no. I freely was going to address that, Your Honor. But, yes, they have conceded that. And because they conceded it, then what? Then I think we would go on to look on the merits of the case at this point, because they conceded the error. All right. And then if we go there, I guess getting to the merits, I'm having a tough time why the testimony is not harmless error when Weishar's limited post-hypnotic testimony is at best, I mean, I'm trying, or worst, whichever you want to categorize it, cumulative of her statements to Detective Kisner and the defendant's voluntary statement, which were both admitted. Well, and once again, I mean, I think there's some cross-examination. I guess the question really revolves around cross-examination, right? I mean, what we're really looking at here, again, is the admission and whether it's harmless error. And when I read the statements to Detective Kisner, and I read the statements of the defendant's voluntary statement, which were both admitted, I'm trying to find out, I mean, I'm having a tough time why it isn't harmless error. Well, once again, I mean, you know, in a harmless error analysis, it's not that there is no evidence. It's just that the evidence, some of the evidence that was submitted creates this, it's so injurious that you have to look at that. And so when you look at what Weishar said, if you will, to Detective Kisner, and you look at what the defendant voluntarily said, which were both admitted, I'm trying to figure out how this testimony made any difference whatsoever. Because it's the testimony that points to him. It's her saying, this is the man that sexually assaulted me. Without that, basically what you have is a very circumstantial case. And so really, that's why it's so injurious, because he can't cross-examine her on the basis of her identification. So it's almost like, you know, having a one-person lineup and that person saying, oh, that's the guy that did it to me. And not being able to cross-examine on that. Can I ask you also about Mancuso? So in Mancuso, we said flat out, the admission of post-hypnotic testimony does not violate the Sixth Amendment right to confrontation. And then we went on to talk about our concerns and procedures and the like. But why aren't we bound by that flat statement that without qualification, the admission of post-hypnotic testimony doesn't violate the Confrontation Clause? But you say it as a matter of law. And we're not saying that all hypnotic testimony should not come in as a matter of law. We're saying that Nevada sets forth a procedure for that testimony to come in. But that would be a state law error, so we're not looking at that, right? But when they violate that law, then your abilities to assert your federal constitutional right to confront are violated. Or you have a due process violation where the jury can't assess or properly assess the victim's testimony regarding her identification because they have nothing to base it on. So the only thing I saw in the briefing was about a Confrontation Clause violation. I didn't see any argument about due process. I'm sorry, go ahead. We did raise a due process violation in the alternative in the opening brief at pages 35 through 36, Your Honor. And I see my time is almost up. So with that, I would like to reserve the remainder of my time for rebuttal. Fine. Unless the Court has any other questions. Apparently not. Good morning, Your Honors. My name is Dennis Wilson from the Nevada Attorney General's Office representing the Warden. In this case, I'll begin with the harmless error analysis. Now, I'll echo much of what Judge Smith said, that if you look at the statements that were made by the victim to Detective Kistner, approximately four hours after she was found, she basically said that the man in the bar raped me numerous times, that it was painful. I told him to stop, but he didn't. So she had a clear recollection at that time of everything that happened and told that to the detective. Before we get to the harmless error analysis, can we figure out what the procedural posture is? So is the State's position that the State court adjudicated the Confrontation Clause claim on the merits? Is that right? No, it's not that at all. I don't think there was a Confrontation Clause issue. They just said that the testimony of the victim was not reliable because they didn't comply with the State statutes. So is it your position the State court, the Nevada Supreme Court, did not adjudicate the Confrontation Clause claim on the merits? Yes, it is. So were we viewing it de novo, not under AEDPA in your view? No, I think we're looking at it under AEDPA. I think it's basically the argument that the State made, that the court made, was that the only procedure, when I say the court, I mean the Federal District Court, was that the only procedural requirement that's required in the Ninth Circuit is that a complete stenographic record of the hypnosis interview be maintained. And I found out later that wasn't done. This is more of a therapy type session where she went through this to help her with that. So based on that posture, that's how we proceeded. The first time I saw the Confrontation Clause argument was in the reply brief. And that's not one of the questions that the Federal District Court certified. One of the questions was, was it unconstitutional? And if so, if there was constitutional error, was it harmless? So I would say based on that, it wasn't very clear what the Nevada Supreme Court did at that time. So in my mind, it seems to me that the State conceded constitutional error and then proceeded. What constitutional error did you concede? Well, I don't know if — I don't believe that the State did concede that there was constitutional error. It was based on what the court had said, that it didn't decide if it was or not, but it was proceeding anyway. It was assuming that — That's the District Court. That's the Federal District Court. And you're suggesting then that your argument there — I understood your argument there, but I also read your briefs here, and my worry was that you have — you had conceded constitutional error. And you went to harmless error analysis because of that error. That's how your brief reads. And I would — It's the way I saw it. Yeah. And I would — I'd say the constitutional error was based on the fact that — and I'm not sure it was constitutional error, but the error was that the procedural requirement of maintaining a written record of what was done at the hypnosis was not kept. So based on that — Sorry. Say that again. I didn't catch that. You're saying what? Okay. As the Federal District Court said in its footnote 4, it said, The only procedural requirement in this circuit, however, is that a complete stenographic record of hypnosis interview be maintained. Neither the Nevada Supreme Court nor the parties discussed whether or not that was done. And so based on that, in a sense, I believed and perhaps conceded that — Well, what's your view of what the Nevada Supreme Court did? If you can be as clear as possible. Well, I think it's just based on the facts that they basically first said you didn't comply with state statute. And so the testimony was not reliable. The second thing they did was that they conducted a Chapman analysis, which would seem to indicate that there was some type of error. And that's what the district court based it on. The only thing — Would a Nevada state court have done a Chapman analysis for an error of state law, or would they only do a Chapman analysis for an error of federal constitutional law? Only for an error of federal constitutional law. The question is, what was the error? And I think that's where the Federal District Court was uncertain. And he seemed to point to the fact that there was no information as to whether or not there had been a record kept. So — So the Nevada Supreme Court identified a state law error, but also had in mind a federal constitutional error, presumably a confrontation clause, but perhaps due process, and then said there's a state law error, and then did a Chapman analysis. So it must have thought it rose, or in its analysis of the federal constitution, thought that arose to a constitutional error, but found that it was harmless, held that it was harmless. I would agree with that. Is that — okay. So then here we have to say the state court adjudicated the V or A federal constitutional claim on the merits, held there was an error, but that it was harmless. Is that correct? I would say that's correct, Your Honor. And so what's your position as to what the state court did? Do you agree with the state court that there was a federal constitutional error, but it was harmless? Yes. And that's what we basically argued. I was going to say that it would be contrary to your brief if you had said no. That's right. Yeah. And it's not as crystal clear as getting into all the hypnosis law. That wasn't done by anyone, either in state or federal court. Anyway, I'll proceed with the harmless error analysis, as Judge Smith stated, that if you look at her testimony, much of it was cumulative. She had already told much of it to Detective Kistner. So it wasn't as if this was the only time that this came into evidence, that her statements came into evidence through Detective Kistner's statements. I think one of the compelling pieces of evidence also comes from the defendant's voluntary statement. He made numerous admissions. He admitted that he had sex with her. He admitted oral, anal, and vaginal sex with the defendant. The detective asked him, did you ever see any injuries or blood while you were having sex? And he said, afterwards, after we had sex, I saw blood on the bed. She said she was on her period and that she should have told me. So that tells us that after they had sex, there was blood. So he was present when there was blood. He was trying to say that someone else did this. But we found out later, through the statements that the victim made to the sexual assault nurse, that the victim was post-menopausal and had been for three years. So we know he lied about that. But we also know that there was blood and that he saw the blood. If this had been consensual sex, there wouldn't have been blood. What about Mr. Lee's argument that she can't identify, she never identified him and so that's a problem? Is that a problem? Well, if she said in the statement to Detective Kistner that it was the guy in the bar that raped her and the bartenders, both bartenders, confirmed that, yes, she was in the bar with this guy. They identified him as being the guy. So I think there's no doubt that she identified him. Plus, he admitted that he had sex with her. He admitted he was in the bar with her. He claimed that they went outside and then she wanted to have sex, so they went to an apartment. So I think that his testimony and the bartender's testimony show that he was the person that sexually assaulted her. Is there evidence, though, that the victim had nonconsensual sex with someone else and does that affect the harmless error analysis? I thought there was some testimony or evidence that the victim had nonconsensual sex with someone on that night, someone else. Is that right? Well, the defendant, no, she never said that she had sex with anyone else. In fact, she said that she didn't have sex with anyone else. He said. The defendant said there was another man there called Hamburger. Hamburger. Hamburger, Mr. Hamburger, and that he, she asked him to join in the sex and all three of them had sex. That's what he said. And she said there is no evidence of that. Obviously, the other thing that comes into play regarding his statements is he said that when we left the apartment, she was fine. And then he said that when we went out into the parking lot and apparently he was, she had, he claimed that she had given him a credit card to buy beer. And when he was going out to buy that beer, he turned around and saw her fall off a ledge and didn't see any blood. But that's what caused all these injuries or caused injuries. As if to say she fell out of a window, right? No, it was apparently was a ledge on the side of the road. Oh, it was about 15 inches high. Sorry, sorry. Yeah, I just wanted to make sure. So it is clear from the serious, serious injuries that she suffered and the testimony of a sexual assault nurse that these injuries were not consistent with consensual sex. They were consistent with sexual assault. There's a five-inch gash in her vaginal area that was bleeding profusely. It was deep and she almost bled to death. That's not evidence of sexual, of consensual sex. She also testified or said. And now we're moving to the testimony of the nurse, right? Well, we're kind of moved to the testimony of the nurse. But going back to her testimony also, when she said that when he asked, what did she rape you with? She said to Detective Kisner with his penis and something else. It wasn't just his penis because it hurt way too bad unless he was really, really big. She said she didn't see his penis. The sexual assault nurse, to get back to that, testified that the injury was caused by a jagged instrument, that it was deep inside the vaginal area, not up to the front of it, and that something had been put in there. It wasn't a smooth cut. It was a jagged cut. And that, again, is not consensual sex. She testified that she kept seeing his face, or she told the detective that she kept seeing his face floating above me in the tone of his voice. I kind of understand your argument. Would you address the uncertified issue of the bad faith investigation? I'm not really prepared to address any bad faith investigation, but I didn't see any bad faith investigation. I'm not sure what it was based on. I guess it was an uncertified issue, and I understand that, but it was of some worry to me, and I wondered if you had any comments, so thank you. All right. The other statement that he made was that when she fell off this ledge, she only hurt her head. The doctor testified that if she had fallen off this 15-inch ledge onto a smooth, flat surface, she wouldn't have had the kind of injuries to her face, the multiple blows to her face that she had. The Nevada Supreme Court stated in one of its opinions that the evidence against the defendant was overwhelming. Based on that, Your Honors, I'd ask you to find that the Nevada Supreme Court's decision was not an unreasonable application of Supreme Court law, and I'd ask you to uphold the district court's decision. Thank you. Thank you. Just really quickly, Your Honors. One of the things my colleague said was that he didn't recognize this as a constitutional violation. But if we look at Volume 2 of the O.R. at page 203, clearly he says in Ground 1 of the Federal Petition, or he recognizes it as a violation of the Sixth and Fourteenth Amendment right to due process and equal protection, a fair trial and confrontation of the witnesses against them. So he's saying that he understands that's what the claim is. Where does he say that it was a due process violation? Page 203, Volume 2. It's in that first paragraph under the Weisher trial. The other thing that I'd like to point out to Your Honors is, Detective Kistner talks about how supposedly she identifies Mr. Nolan the night of the sexual assault. But here's the question that he asks this woman who's been determined to be acutely intoxicated and who has suffered severe head injuries. But here's his question. Do you recall anyone else attacking you other than the black fellow from the bar? I mean, once again, that's highly suggestive. That's pointing right back to Mr. Nolan. She says, I talked to this black fellow at the bar. Next thing you know, we have the checkpoint. Who else assaulted you besides the black fellow at the bar? So he's putting it already in her mind that it's Mr. Nolan. So once again, we're back to this kind of really suggestive kind of lineup again, where it's just pointing right back to the same person. So for him to rely on that seems kind of disingenuous. However, we didn't have any objection to his testimony, right? No, but once again, it just points to the fact that we have this. My worry is that you can't really attack his testimony now by some objection you would have made at the time if you didn't object then. I have to look at the testimony that's in the record as it is and see if that's enough to overcome if there was constitutional violation. Isn't that my job? I understand that. I'm not saying I object to it. I'm just pointing out to you that the detective admitted that he suggested the answer in his question. That's what I'm pointing out. So you have this post-hypnotic identification of a man, and before you have this post-hypnotic identification of Mr. Nolan, you have this highly suggestive identification of Mr. Nolan by the detective who's investigating this offense. Which has never been argued before, correct? No, we have argued it. We did point it out to you in our briefs, Your Honor. Well, I guess my worry was when we had this trial and we had this testimony coming in, there was no objection, there was no argument that this was not what should come in. And it came in. Well, that's why the Nevada Supreme Court said it shouldn't come in. I mean, that's the problem. The other thing that I'd like to point out really quick. That's my question, but that's okay. Oh, I'm sorry. I think I know where you're going. Please wrap up. You're over time. Your Honors, we just ask that the writ be granted. Thank you. Thank you. Thank you. The case of Nolan v. Palmer is submitted. We'll next hear argument in the case of Nettles v. Brown.
judges: Ikuta, Smith, Murguia